Electronically Filed
Supreme Court
SCWC-15-0000632
24-OCT-2019
08:02 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

IN THE MATTER OF THE
TRUST AGREEMENT DATED JUNE 6, 1974, AS AMENDED

SCWC-15-0000632

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000409, CAAP-15-0000414,
CAAP-15-0000576, CAAP-15-0000598, CAAP-15-0000632;
TRUST NOS. 14-1-0019 and 14-1-0097)

OCTOBER 24, 2019

NAKAYAMA, ACTING C.J., POLLACK, AND WILSON, JJ.,
CIRCUIT JUDGE ASHFORD IN PLACE OF RECKTENWALD, C.J., RECUSED,
AND CIRCUIT JUDGE TO‘OTO‘O, IN PLACE OF McKENNA, J., RECUSED

OPINION OF THE COURT BY NAKAYAMA, J.

This appeal arises from a 2014 petition by

Respondent/Petitioner-Appellee Bank of Hawai‘i (BOH) to resign as

trustee for a trust comprised of several parcels of land

underlying the Discovery Bay condominium complex in Waikīkī

(Trust).  Petitioners/Respondents-Appellants Michael David Bruser

and Lynn Bruser (collectively, "the Brusers"), who hold the leasehold commercial unit in the condominium, and several Trust beneficiaries objected to BOH's petition to resign as trustee.

In the subsequent litigation in the Probate Court of the First Circuit (probate court), the probate court entered several orders that determined that a monthly trustee's fee of $9,850 was reasonable, permitted BOH to reform the trust agreement, and awarded attorneys' fees and costs to BOH. The probate court, however, specifically declined to determine whether the Brusers were liable to pay the trustee's fees. Thereafter, the Brusers filed two appeals in the Intermediate Court of Appeals (ICA) challenging these orders.

After their appeals were consolidated with the appeals of other beneficiaries, the Brusers filed an opening brief alleging that the probate court erred when it determined that the $9,850 trustee's fee was reasonable and when it awarded an unreasonable amount of attorneys' fees and costs to BOH. The Brusers also stated that the probate court erred in exercising jurisdiction over the Brusers, who are not parties to the Trust Agreement, and holding them responsible for the increased trustee's fee.

The ICA determined that under the language of the Trust Agreement and the condominium conveyance document for the

commercial unit, the Brusers were responsible for paying the trustee's fees.  The ICA also concluded that the $9,850 monthly trustee's fee was reasonable.  Accordingly, it affirmed the probate court's orders denying the Brusers' motion for reconsideration and granting in part the petition for resignation.  Additionally, the ICA rejected the Brusers' specific objections to the probate court's attorneys' fees and costs order, but vacated and remanded the order on other grounds.

On certiorari, the Brusers contend that the ICA erred when it concluded that they are liable for the trustee's fees even when the probate court made no such determination, and when the probate court did not allow the Brusers discovery to determine the reasonableness of the trustee's fee.  They also challenge the ICA's failure to address their specific objections to the probate court's attorneys' fees and costs order, even if the ICA vacated and remanded the order on other grounds.

On review of the record and the orders entered by the probate court in this case, we first agree with the Brusers to the extent that the probate court did not make any determination regarding their liability for the trustee's fees.  Therefore, the ICA erred in concluding, in the first instance, that the Brusers are liable for the trustee's fees when the probate court did not address the issue.  We vacate the ICA's judgment on appeal to the

extent that it holds the Brusers liable for the trustee's fees.

However, for the reasons set forth herein, we affirm the ICA's judgment on appeal that affirmed the probate court's conclusion that a $9,850 monthly trustee's fee is reasonable. We also affirm the ICA's judgment on appeal vacating and remanding the probate court's attorneys' fees and costs order.

## I.    BACKGROUND

### A.    The Formation of the Trust

On June 6, 1974, various parties who owned thirteen adjacent parcels of land under what is now the Discovery Bay condominium complex (Discovery Bay) at 1778 Ala Moana Boulevard in Waikīkī entered into a trust agreement with Mainline-MEPC Properties (Hawaiʻi), Inc. (MEPC Properties), a construction company that wished to build a condominium at the site, and Hawaiian Trust Company, Limited (Hawaiian Trust Company), as trustee, to construct a condominium on the property.

The purposes of the Trust, as described in the Trust Agreement, were to (1) construct a condominium on the property; (2) provide efficient and uniform administration of the Settlors' interests; (3) determine the value of the leases created by condominium conveyance documents (CCD); (4) distribute rental income under the CCDs to the Settlors; and (5) administer the property on the termination of the leases created under the CCDs.

4

As defined by paragraph 2 of the Trust Agreement, the trustee's powers were limited to the powers expressly granted by the Trust Agreement.[1]  The Trust Agreement provided other provisions with respect to trustee's fees and the resignation of the trustee:

> 11.  Trustee's Fees.  The Trustee shall be entitled to such reasonable fees as from time to time may be mutually agreed upon.  In addition to said reasonable fees, the Trustee shall have the right to incur such expenses and to be reimbursed by the Lessee as provided for by the leases; and to incur such expenses and be reimbursed for extraordinary services. The Lessee or its assigns will pay the Trustee's fee and expenses until December 31, 2039 or the earlier termination of this trust.[2]
>
> . . . .
>
> 17.  Resignation, Removal and Substitution of Trustee.
>
> (a)  Resignation of Trustee.  The Trustee may resign its duties hereunder by filing with each person designated as a representative its written resignation.  No such resignation shall take effect until sixty (60) days from the date thereof unless prior thereto a successor Trustee shall have been appointed.
>
> . . . .
>
> (c)  Appointment of Successor Trustee.  A successor Trustee hereunder may be appointed hereunder upon the majority vote of representatives of Settlors having an interest in the majority in square footage in the jointly developed parcel and shall take effect

---

[1]  These express powers included the power to join in a petition for consolidation in order to develop the adjacent parcels as a single parcel of real estate, to execute condominium conveyance documents and to collect rents from those condominiums, to grant easements over the trust estate, to employ administrative assistants, to file tax returns on behalf of the Trust, and "[t]o care for and protect the trust estate for the Settlors and to incur such costs and expenses on behalf of the trust as may be reasonably necessary to protect the trust estate and to administer the trust."

[2]  MEPC Properties was defined as the "lessee" in the Trust Agreement.

> upon the delivery to the resigning or removed Trustee,
> as the case may be, of (i) an instrument in writing
> appointing such successor Trustee, and (ii) an
> acceptance in writing of the successor Trustee
> hereunder executed by the successor so appointed.
>
> Any successor Trustee hereunder shall be a
> corporation authorized and empowered to exercise trust
> powers within the State of Hawaii. . . .

Pursuant to an agreement with MEPC Properties in 1974, Hawaiian Trust Company, the original trustee, received an annual trustee's fee of $800.00.

## B.   The Brusers and the Commercial Unit

Discovery Bay consists of 665 leasehold residential units and one leasehold commercial unit (Commercial Unit). Title to the leasehold interests is held by an "Apartment Owner" under the terms and conditions of a CCD for that unit.

On December 1, 1976, the Commercial Unit CCD was executed between Hawaiian Trust Company, as trustee and lessor, and MEPC Properties, as the "Apartment Owner."  Therein, Hawaiian Trust Company conveyed the Commercial Unit to MEPC Properties for a term "commencing on the 1st day of December 1976, and terminating at midnight on the 31st day of December, 2039."  The Commercial Unit CCD contains a provision stating that "[t]he Apartment Owner shall also pay to the Lessor all fees and expenses charged or incurred by the Lessor as Trustee under the terms of the said Trust Agreement[.]"

On or about December 14, 1984, the Brusers acquired the

Commercial Unit from MEPC Properties by a deed (Apartment Deed). Pursuant to the Apartment Deed, the Brusers stated that for ten years, they "paid all monthly rents, costs, expenses, assessments, and charges required and demanded of them in a timely manner, and continue to do so."

In February 1994, BOH, which had previously acquired Hawaiian Trust Company (and thus had become the trustee of the Trust), requested a monthly trustee's fee of $500 for its efforts on behalf of the trust beneficiaries. While the Brusers questioned the validity and reasonableness of the trustee's fee, they nevertheless agreed to pay the $500 monthly fee.

In 2001, after being notified that BOH intended to increase the monthly trustee's fee from $500 to $2,586, the Brusers filed a complaint for declaratory judgment in the United States District Court for the District of Hawaiʻi (U.S. District Court) requesting that the U.S. District Court find that they were not liable for any alleged trustee's fees. The Brusers later settled with BOH and agreed to pay a monthly trustee's fee of $1,100 until December 31, 2002.

The Brusers appear to have continued to pay the monthly trustee's fee of $1,100 until BOH filed its petition to resign as trustee in January 2014.

C.    **Probate Court Proceedings**

On January 28, 2014, BOH filed a "Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 through December 31, 2013" (Petition for Resignation) in the probate court.[3] While BOH did not explain why it wished to resign, it informed the probate court that the beneficiaries had not yet selected a successor trustee, that Central Pacific Bank and First Hawaiian Bank were the only corporations authorized to exercise trust powers in the state, and that pursuant to paragraph 17(c) of the Trust Agreement, they were the only entities that could become a "successor trustee." BOH also stated that Central Pacific Bank and First Hawaiian Bank had declined to serve as the successor trustee, and therefore BOH requested that the probate court approve a reformation of paragraph 17(c) that struck language requiring a corporation to be a successor trustee.

Respondent/Respondent-Appellant Association of Apartment Owners of Discovery Bay (AOAO), the majority owner of the beneficial interests in the Trust, objected to BOH's Petition for Resignation. It claimed that BOH's resignation would be "highly detrimental to the Trust assets and the Beneficiaries'

---

[3]    The Honorable Derrick H.M. Chan presided.

8

interest in the Trust."  Several of the non-AOAO beneficiaries also filed objections to BOH's Petition for Resignation and requested that the probate court deny its petition.[4]

As an interested party, the Brusers also filed a position statement wherein they stated that they paid a monthly trustee's fee of $1,100 to BOH, and requested that any approval of the Petition for Resignation should be accompanied by an order that the successor trustee be bound to a $1,100 monthly trustee's fee pursuant to the provisions of the Commercial Unit CCD.

### 1.    Interim Order

In preparation for a hearing in the probate court, BOH filed a Supplement to Petition for Resignation of Trustee. Therein, BOH informed the probate court that it had met with the beneficiaries and had proposed several reformations to the Trust Agreement.  BOH further stated that because the beneficiaries had rejected its proposed trust reformations, it had informed the beneficiaries that it would seek compensation as provided by HRS § 607-18.[5]  BOH argued that under the statute, a corporate

---

[4]    These beneficiaries included Respondent/Respondent-Appellee Kevin I. Yokoyama, Respondents/Respondents-Appellees Susan Sheetz and Patricia Sheetz Bow, and Respondent/Respondent-Appellee Julia G. Henderson.

[5]    HRS § 607-18 (Supp. 2014) became effective on January 1, 2015, and provides:

> **Compensation of trustees.**  (a) Unless the trust instrument otherwise provides, or the settlor and trustee otherwise agree, or, after the settlor's

(continued...)

trustee is entitled to fees as set forth in its fee schedule. BOH's standard fee schedule for "[i]ncome producing properties [m]anaged with [a] third-party property manager" called for an annual fee of 6% of the gross rental income collected. Applying BOH's standard 6% fee to the annual rent of $3,378,840.00, BOH concluded that it was entitled to an annual trustee's fee of $202,730.40, or $16,894.20 per month.

The AOAO opposed the request for a trustee's fee of $16,800 as unreasonable. The Brusers joined the AOAO's position regarding BOH's request to resign as trustee. Additionally, regarding BOH's request to reform the trust, the Brusers explained that they

> support[ed] any reformation of the Trust that is in accordance with the amendments that are agreed to by [BOH] and the beneficiaries, except for any attempt to have it as the Commercial Owner of the Commercial Unit (or as the "CU Lessee") continue to pay the amount [previously agreed to in the Settlement] if the Bruser Trust is also going to have to pay for some portion (its percentage of common interest) of the Trustee's fees as a member of the AOAO. It is not equitable for

---

[5](...continued)
death, all the beneficiaries and the trustee otherwise agree, the trustee shall be entitled to the compensation set forth in this section and the compensation shall be deemed to be reasonable. For good cause shown, the court may also approve any other fee arrangement that it deems reasonable.
    (b) Banks and trust companies serving as trustees shall be entitled to reasonable compensation, which may be set forth in their published fee schedules and may be amended from time to time; provided that advance written notice of any amendment to the fee schedule is provided to the settlor or, after the settlor's death, to all beneficiaries.

(Emphases added.)

> the Bruser Trust to pay for both amounts if that is
> what the Petitioner and the beneficiaries are
> attempting to structure.

(emphasis in original).

Before the probate court entered an order on BOH's Petition for Resignation, on August 28, 2014, the Brusers initiated proceedings for declaratory relief in the U.S. District Court requesting that the U.S. District Court order the Brusers not liable to pay trustee's fees. See infra Section I.D.

On September 8, 2014, BOH reported that it had arranged a compromise agreement with the non-AOAO beneficiaries regarding the amount of the trustee's fee. This Outline Agreement proposed a trustee's fee of 3.5% of the rental income, or $9,850 per month.

At a September 11, 2014 hearing before the probate court, BOH argued that the Outline Agreement as reached by BOH and the non-AOAO beneficiaries should be adopted. In response, the AOAO argued that the trustee's fee was "high" and unreasonable. It also contended that the Brusers were required to pay the trustee's fees under the provisions of the Trust. The Brusers stated that they could not be liable for paying the trustee's fees, but did not take any position with respect to the reasonableness of the amount of the trustee's fee:

> We're not taking a position today as to what the
> fees should be because that's between - that's under
> the trust. And this court has jurisdiction under the
> trust. And we can't take a position because we're not

11

> one of the beneficiaries. We're just simply here to protect the Brusers' rights and to ask this court to not overstep its jurisdiction as we've laid out.

At the conclusion of the hearing, the circuit court stated it would preliminarily approve a monthly sum of $9,850 as a reasonable trustee's fee, and approve the withholding of the monthly fee from the distributions to the beneficiaries for the five-year period as stated in the Outline Agreement.

On November 6, 2014, the Brusers filed an Ex Parte Motion for Leave to Take Depositions in the probate court. In their ex parte motion, the Brusers appeared to take a contrary position from the position they held at the September 11, 2014 hearing, and argued that the $9,850 monthly fee was "excessive and cannot be justified[.]" In support of their motion, the Brusers noted that they had already conducted an investigation into the work performed by BOH, "and their findings confirm that, contrary to BoH's title as Trustee on behalf of Discovery Bay, BoH has few, if any, substantive responsibilities with respect to the management of the subject trust." The probate court denied the Brusers' motion.

The probate court entered an "Interim Order Relating to Petition for Resignation of Trustee" (Interim Order) on December 24, 2014. Therein, the probate court ordered:

> A. A monthly sum of $9,850 is approved as a "reasonable fee" under Trust paragraph 11, for the five-year period commencing October 1, 2014, which approval is effective September 11, 2014.

12

> B.   The withholding of this monthly fee from distributions to the beneficiaries for the five-year period commencing October 1, 2014 is approved, which approval is effective September 11, 2014.
>
> C.   The balance of the agreement in principle as set forth in the Non-Binding Outline of Agreement, attached as Exhibit A to [BOH's] Statement of Position, is approved, subject to final documentation and review by the Court.
>
> . . . .
>
> E.   At this time, the Court will not address the issue of the liability of interested parties Michael David Bruser and Lynn Bruser, as Trustees under Revocable Living Trust Agreement dated July 11, 1988, as amended, dba Discovery Bay Center, and any party may file a Petition with respect to such issue.

No final judgment was entered.

## 2.   Second Order Granting in Part Petition for Resignation

On January 6, 2015, the Brusers filed a "Petition Under HPR Rule 36 for Relief from Order and Reconsideration of Interim Order Relating to Petition for Resignation of Trustee" (Petition for Reconsideration).  Therein, the Brusers contended, inter alia, that BOH should not be entitled to $9,850 in trustee's fees.  Specifically, the Brusers argued:

> 14. Again, while we have no quarrel with what the Bank of Hawaii may think that it is worth . . . the reasonableness of its fees surely must be measured not by its own big bank standards, but by what other organizations, accounting and not trustee wise, are willing to do and can do the identical work for, given what it is actually doing, especially so as not to financially burden the Brusers in what is still a very difficult economy and markedly so for any commercial center today.

On March 5, 2015, the probate court held a hearing on the Brusers' Petition for Reconsideration, and further considered

13

BOH's Petition for Resignation. During the hearing, the Brusers renewed their request for discovery to determine BOH's actual duties as the trustee but acknowledged that they may not have followed correct probate procedures in requesting discovery. The Brusers argued that the reasonableness of the trustee's fee was a factual issue, and that the probate court should wait to determine the reasonableness of the $9,850 trustee's fee until it could determine what BOH actually did.

On April 17, 2015, the probate court entered an Order Denying the Brusers' Petition for Reconsideration of the Interim Order (Order Denying Petition for Reconsideration) and Judgment. It also entered a "Second Order Granting in Part and Continuing in Part Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" (Second Order Granting in Part Petition for Resignation). That order approved the agreement between BOH and the non-AOAO beneficiaries on trustee's fees and ordered that a monthly sum of $9,850 be approved as a "reasonable fee." The order continued BOH's Petition for Resignation with respect to the trust reformations it sought and attorneys' fees and costs. Judgment was also entered on April 17, 2015.

### 3.    Attorneys' Fees and Costs Order

On April 17 and May 22, 2015, BOH filed two affidavits in support of attorneys' fees and costs.  In its affidavits, BOH stated that at the usual and customary billing rates of the persons providing trustees' services for the period of May 12, 2014 through March 31, 2015, and April 1, 2015 through May 14, 2015, BOH requested a total of $154,826.75 in attorneys' fees and costs.

On April 30, 2015, the probate court held a hearing to resolve the issues that were continued in its Second Order Granting in Part Petition for Resignation.  With respect to attorneys' fees and costs, the Brusers argued that they should not be responsible for paying attorneys' fees and joined the AOAO's argument that the attorneys' fees were unreasonable.

The probate court then orally adopted the Trust reformations that BOH had proposed.[6]  The probate court allowed any party that had objections to BOH's affidavits regarding attorneys' fees and costs to file specific objections to the fees and costs within thirty days.

On June 1, 2015, the AOAO filed Objections to BOH's affidavits in support of attorneys' fees and costs.  Therein, the

---

[6]    These reformations are referred to in the proceedings as the "Base Case Plus" reformations, which amended paragraphs 2, 3, 4, and 5 of the Trust Agreement.  They are not relevant for the purposes of the Brusers' application for writ of certiorari.

AOAO noted that much of the work done by BOH's counsel was in preparation to resign or to reform the trust provisions for BOH's own benefit. The AOAO contended that "[w]here the trustee expends legal fees to protect its own personal interests such fees should not be charged to the trust."

On June 1, 2015, the Brusers also filed Objections to BOH's affidavits in support of attorneys' fees and costs. Therein, the Brusers provided six reasons why they believed that BOH should not be awarded attorneys' fees and costs. Among the reasons provided were that counsel engaged in impermissible block billing, that counsel did not attach receipts and invoices, that counsel's work was impermissibly duplicative, and that counsel did not allocate fees and costs "based upon whose arguments and whose papers they actually responded to."

On August 13, 2015, the probate court entered an Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period From January 1, 2008 Through December 31, 2013 as to Last Pending Issue Regarding Attorneys' Fees and Costs (Attorneys' Fees and Costs Order). Therein, the probate court granted reduced fees and costs to BOH's attorneys in the amount of $152,605.10. The award was approximately $2,000 less than the amount that BOH had actually requested (i.e.,

16

$154,826.75). The probate court did not explain how it had arrived at the reduced amount. The probate court also entered its Judgment on Attorneys' Fees and Costs Order on August 13, 2015.

**D.   Proceedings in the U.S. District Court**

Meanwhile, on July 21, 2015, the U.S. District Court concluded that under the terms of the Commercial Unit CCD, the Brusers, as apartment owners of the Commercial Unit, were liable for the trustee's fees. The U.S. District Court concluded that "the plain and ordinary meaning of the terms of the Apartment Deed and the [Commercial Unit] CCD require the Brusers to pay 'all fees and expenses' as provided by the Trust Agreement. One such fee is the Trustee Fee."

However, the U.S. District Court also clarified that it would not determine what the trustee's fee should be:

> The Court here clarifies the limits on its ruling. It simply finds that the [Commercial Unit] CCD requires the Brusers to pay all fees under the Trust Agreement and that one such fee is the Trustee Fee. This is the sum total of the ruling. In short, this Court makes no judgment as to what the Trustee Fee should be, who must mutually agree to it, and what is reasonable.

The Brusers appealed the U.S. District Court's order to the Ninth Circuit Court of Appeals; that appeal is currently pending.

**E.   ICA Proceedings**

The Brusers and the AOAO filed five separate appeals to

17

the ICA from the probate court's various orders arising out of these proceedings. Four appeals are pertinent to the issues raised in the Brusers' application for writ of certiorari.

In CAAP-15-0000409, the AOAO appealed from the probate court's April 17, 2015 Second Order Granting in Part Petition for Resignation, and challenged the probate court's determination that a trustee's fee of $9,850 was reasonable when there was no substantial evidence to support that fee amount. In CAAP-15-0000414, the Brusers appealed from the probate court's April 17, 2015 Order Denying Petition for Reconsideration and similarly challenged the probate court's Second Order Granting in Part Petition for Resignation.

In CAAP-15-0000632, the AOAO appealed from the probate court's August 13, 2015 Attorneys' Fees and Costs Order and Judgment. In CAAP-15-0000598, the Brusers also appealed from the probate court's Attorneys' Fees and Costs Order and Judgment.[7] The ICA consolidated the five cases for appeal.

In its opening brief, the AOAO argued, inter alia, that the probate court improperly imposed a monthly trustee's fee of

---

[7]     In the fifth appeal, CAAP-15-0000576, the AOAO appealed the probate court's July 13, 2015 "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 through December 31, 2013 as to All Pending Issues," which had adopted the "Base Case Plus" reformations.
    The ICA vacated and remanded the order. It is not challenged by the Brusers on certiorari.

$9,850 because that amount was not mutually agreed upon as required by paragraph 11 of the Trust Agreement. The AOAO also contended that the probate court erred in awarding attorneys' fees to BOH because the litigation was not in advancement of the interests of all the beneficiaries of the trust. (Citing In re Estate of Campbell, 46 Haw. 475, 522, 382 P.2d 920, 953 (1963)).

The Brusers raised several points of error in their opening brief. The Brusers argued that the probate court erred: (1) "by exercising jurisdiction over the Brusers who were not parties to the Trust Agreement . . . holding them responsible for increased fiduciary Trustee's Fees;" (2) "wrongly applying a discretionary fee schedule, thereby prejudicing them despite nondisclosures otherwise by the Trustee when they purchased the commercial units concerning increases in the Trustee's Fees;" (3) "by failing to correctly interpret the plain meaning of the contractual language agreed upon between the Brusers and the Trustee;" and (4) "by refusing to permit discovery to determine what exactly the Trustee actually does so as to determine a reasonable fee[.]"

The Brusers' fifth point of error involved the probate court's award of attorneys' fees and costs. The Brusers argued that the award was not reasonable because the request was riddled with block billing and did not submit "any evidence that the

19

claimed billing rates and charges were both customary and reasonable."

In BOH's answer, BOH first argued that the probate court "did not exercise jurisdiction over the Brusers' contract claims under the Commercial Unit CCD." BOH noted that in the Interim Order, the probate court specifically stated that it "will not address the issue of the liability of interested parties [the Brusers] . . . and any party may file a Petition with respect to such issue."

With respect to the reasonableness of the trustee's fee, BOH noted that HRS § 607-18 provided that "the public fee schedule of a bank or trust company establishes a benchmark of reasonable compensation for trust services,"[8] and that under BOH's standard fee schedule, it was entitled to 6% of gross rental income as its trustee's fee. Because the fee as approved by the probate court was only 3.5% of the annual trust income, BOH argued that the trustee's fee was reasonable.

Finally, with respect to attorneys' fees and costs, BOH argued that the probate court did not abuse its discretion in concluding that BOH's fees and costs were reasonable.

On June 29, 2018, the ICA entered a memorandum opinion which, inter alia, affirmed the probate court's Order Denying

---

[8]     See supra note 5.

20

Petition for Reconsideration and the probate court's Second Order

Granting in Part Petition for Resignation, but vacated the

probate court's Attorneys' Fees and Costs Order and accompanying

Judgment and remanded to the probate court.  In the Matter of

Trust Agreement dated June 6, 1974, Nos. CAAP-15-0000409, CAAP-

15-0000414, CAAP-15-0000576, CAAP-15-0000598 & CAAP-15-0000632,

2018 WL 3199232 (App. June 29, 2018) (mem.).

The ICA concluded that, "as measured by the statute,

the [trustee's] fee amount was authorized and reasonable."

However, with respect to the probate court's Attorneys' Fees and

Costs Order, the ICA vacated and remanded the order because the

probate court did not make any findings as to whether the

litigation was in the interest of all beneficiaries.  (Citing In

re Campbell's Estate, 46 Haw. at 522, 382 P.2d at 953.)

With respect to the Brusers' appeal, the ICA concluded

that the Brusers' point of error alleging that the probate court

erred in interpreting the meaning of the Commercial Unit CCD was

raised for the first time on appeal and therefore waived.

Notwithstanding its waiver conclusion, the ICA further determined

that under the plain meaning of the Commercial Unit CCD "[t]he

Apartment Owner shall also pay to the Lessor all fees and

expenses charged or incurred by the Lessor as Trustee under the

terms of said Trust Agreement dated June 16, 1974, as amended, as

21

the same become due or are incurred." (Emphases omitted). Because the Brusers were the Apartment Owners of the Commercial Unit, the ICA stated that the plain language of the Commercial Unit CCD required the Brusers to pay the trustee's fees.

Additionally, the ICA determined that because the Brusers did not comply with proper HPR procedures in their request for discovery to determine the reasonableness of the trustee's fee, the Brusers' argument that the probate court erred in denying them discovery was without merit.

As noted previously, the ICA vacated and remanded the probate court's Attorneys' Fees and Costs Order. However, with respect to the Brusers' specific allegation of block billing, the ICA concluded that their opening brief "fail[ed] to provide any citation to the alleged block billing in the BOH's requests for fees and costs." Accordingly, the ICA deemed their argument waived.

The ICA entered its judgment on appeal on July 31, 2018.

The Brusers filed an application for writ of certiorari that challenged the ICA's memorandum opinion affirming the probate court's Order Denying Petition for Reconsideration and Judgment and Second Order Granting in Part Petition for Resignation and Judgment and vacating the probate court's

Attorneys' Fees and Costs Order and Judgment.

## II. STANDARDS OF REVIEW

### A. Reasonableness of Trustee's Fees

HRS § 607-18 (Supp. 2014) "[e]ntitles corporate trustees to fees under their published fee schedules instead of the fee schedule under [the previous] statute." See S. Stand. Comm. Rep. No. 275, in 2013 Senate Journal, at 992. Accordingly,

> [u]nless the trust instrument otherwise provides, or the settlor and trustee otherwise agree, or, after the settlor's death, all the beneficiaries and the trustee otherwise agree, the trustee shall be entitled to the compensation set forth in this section and the compensation shall be deemed to be reasonable. For good cause shown, the court may also approve any other fee arrangement that it deems reasonable.

HRS § 607-18(a).

Recognizing that the Legislature reformed the trustee's compensation statute to "reduc[e] the need for court intervention," see S. Stand. Comm. Rep. No. 275, in 2013 Senate Journal, at 992, a court's approval of compensation to a corporate trustee as set forth in its published fee schedule is "deemed to be reasonable[,]" HRS § 607-18(a), and reviewed on appeal only for an abuse of discretion. Similarly, a court's decision to approve "any other fee arrangement[,]" HRS § 607-18(a), for trustee compensation is also reviewed for an abuse of discretion. See Iwamoto v. Hirata, 49 Haw. 514, 515, 422 P.2d 99, 100 (1966) ("The determination of good cause rests largely in

23

the discretion of the trial court and what constitutes good cause will depend mainly on the facts of the case.").

An abuse of discretion occurs when a trial court "has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Chun v. Bd. of Tr. of Emp. Ret. Sys., 106 Hawaiʻi 416, 431, 106 P.3d 339, 354 (2005).

## B.   Attorneys' Fees and Costs

> This court reviews a lower court's award of attorneys' fees for abuse of discretion. Allstate Ins. Co. v. Pruett, 118 Hawaiʻi 174, 179, 186 P.3d 609, 614 (2008). "The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. In other words, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id.

Hart v. Ticor Title Ins. Co., 126 Hawaiʻi 448, 455, 272 P.3d 1215, 1222 (2012) (citations omitted).

## III.  DISCUSSION

On certiorari, the Brusers renew their objections to the probate court's orders approving trustee's fees and attorneys' fees and costs. We construe their arguments to raise three general questions: (1) whether the ICA erred in deciding that the Brusers were required to pay the trustee's fees when the probate court made no determination of liability; (2) whether the ICA erred in affirming the probate court's decision to deny the

Brusers any discovery to determine the reasonableness of the trustee's fee; and (3) whether the ICA erred in ignoring the Brusers' attorneys' fees and costs objections.

## A. The ICA erred in considering whether the Brusers were liable for trustee's fees.

The Brusers contend that the probate court lacked jurisdiction to adjudicate any financial obligations which stemmed from the Commercial Unit CCD. The Brusers therefore argue that the ICA erred when it concluded that the Brusers had an obligation to pay the trustee's fees, even when the probate court made no such determination as to liability.

We agree with the Brusers on this point. The probate court did not make any finding or determination that the Brusers were liable for the trustee's fee. At the September 11, 2014 hearing, the probate court acknowledged that the issue of the liability for trustee's fees was currently being litigated in the U.S. District Court. Accordingly, in its December 24, 2014 Interim Order, the probate court specifically noted, "[a]t this time, the Court will not address the issue of the liability of [the Brusers], and any party may file a Petition with respect to such issue." (Emphasis added.) The probate court's subsequent orders in these proceedings do not indicate that it made any further rulings regarding the Brusers' liability for trustee's fees. Moreover, there is nothing in the record to indicate that

25

the Brusers filed a petition in the probate court on such issue.

In their opening brief, the Brusers appealed the reasonableness of the trustee's fee. The Brusers also stated that the probate court erred when it exercised jurisdiction over them and "[held] the Brusers liable for increased Trustee's Fees," even when the probate court made no such determination. The ICA acknowledged that the Brusers' argument on this point had been waived, but then addressed the issue of liability in the first instance.[9] It should not have done so, especially when the Brusers had also noted in their opening brief that the liability issue had been litigated in the U.S. District Court.

Therefore, the issue of liability for the trustee's fee was not properly before the ICA because the probate court explicitly declined to rule on that matter. The ICA erred when it resolved, in the first instance, whether the Brusers were liable for the trustee's fee.

**B.  The probate court did not err in denying the Brusers' request for discovery or determining that the trustee's fee was reasonable.**

The Brusers also contend that the probate court erred when it "decided the reasonableness of the fee increase in a vacuum." On this specific point, the ICA did not err in

---

[9]      The Brusers' opening brief could certainly have been clearer on the issue. We caution counsel for the Brusers to ensure, pursuant to HRAP Rule 28(b)(4) and (7), that the argument "contain[s] the contentions of the appellant on the points [of error] presented and the reasons therefor[.]"

concluding that the Brusers' argument was without merit.

Under Hawaiʻi probate court rules, "contested matters in probate do not clearly give rise to the right to discovery, and it is rare for the court to specifically address the issue." Hawaiʻi Probate Rules (HPR) Rule 20(d) cmt. (2010).[10] To seek discovery, a party must file an objection, which characterizes the probate court proceeding as a "contested matter." HPR 19 (2006).[11] Once the proceeding becomes a contested matter, the probate court must then determine, pursuant to HPR Rule 20(a), whether to retain the proceeding on the probate calendar or to assign it to the civil trial calendar. After the designation of assignment, if the party wishes to conduct discovery, it must request that discovery be taken. See HPR Rule 20(d).

After the Brusers filed their Ex Parte Motion for Leave to Take Depositions, the probate court denied the motion. The

_____

[10]    HPR Rule 20(d) provides:

(d) Procedures in retained contested matters.
Whenever the court retains jurisdiction of a contested matter as a probate proceeding, the court in the order of assignment may, at the request of the parties, designate and order that any one or more of the Hawaiʻi Rules of Civil Procedure and/or the Rules of the Circuit Courts shall be applicable in such matter.

[11]    HPR Rule 19 provides:

A contested matter is any one in which an objection has been filed. The contested matter shall be limited to facts and issues in dispute, and shall not affect other issues or pleadings before the court with respect to the same proceeding that are not in dispute, provided that no party is prejudiced thereby.

27

Brusers later conceded that they did not follow the correct probate court procedure in requesting discovery when they did so through an ex parte motion.[12]  There is no evidence in the record to suggest that the Brusers requested discovery pursuant to HPR Rule 20(d) after their ex parte motion was denied.  Because the Brusers did not adhere to proper probate procedures in requesting discovery, the probate court did not err in denying the Brusers discovery.

To the extent that the Brusers argue on certiorari that the probate court's award of trustee's fees was unreasonable, we disagree.  The probate court did not abuse its discretion in concluding that a trustee's fee of $9,850 per month for a trust that generated approximately $3,000,000 per year in revenue was a "reasonable fee."

---

[12]    According to HPR Rule 23, the Brusers' ex parte motion was not appropriate.  HPR Rule 23 (2003) provides:

Proceedings may be conducted on an ex parte basis (without notice or hearing) when:
(a) All interested parties who are entitled by statute to notice of the petition join in the petition; or
(b) An emergency exists such that delay for a hearing would cause irreparable harm and the basis for the emergency is supported by affidavit; or
(c) There is no controversy and the relief requested is automatic under statute or rule; or
(d) Other situations exist in the court's discretion that warrant action without notice or hearing.
The party presenting a petition under paragraph (b) of this Rule 23 requiring immediate action of the court shall title the petition "Emergency Ex Parte Petition for . . ." to distinguish it from any other form of ex parte petition.

In 2014, the Legislature, intending to clarify the law relating to trustee compensation, changed the statutory scheme to "[entitle] corporate trustees to fees under their published fee schedules instead of the fee schedule under statute[.]" See S. Stand. Comm. Rep. No. 275, in 2013 Senate Journal, at 992. HRS § 607-18 (Supp. 2014) therefore provides:

> **Compensation of trustees**. (a) Unless the trust instrument otherwise provides, or the settlor and trustee otherwise agree, or, after the settlor's death, all the beneficiaries and the trustee otherwise agree, the trustee shall be entitled to the compensation set forth in this section and the compensation shall be deemed to be reasonable. For good cause shown, the court may also approve any other fee arrangement that it deems reasonable.
>     (b) Banks and trust companies serving as trustees shall be entitled to reasonable compensation, which may be set forth in their published fee schedules and may be amended from time to time; provided that advance written notice of any amendment to the fee schedule is provided to the settlor or, after the settlor's death, to all beneficiaries.

HRS § 607-18 (emphases added).

In other words, unless otherwise agreed upon, the trustee's fee may be determined by HRS § 607-18. Under HRS § 607-18(b), a bank serving as a trustee may rely on its published fee schedules to set a reasonable trustee's fee.[13]

---

[13] Legislative history indicates that the fees charged under a corporate trustee's published fee schedule are deemed reasonable. As noted in the Senate Standing Committee Report,

> [T]he statutory fee schedule under existing law may not be appropriate for a corporate trustee that has various departments and staff providing trust services. Because there is competition in the marketplace, the reasonableness of a corporate trustee's fees can be determined by the market where the consumer is able to use another trust company if

(continued...)

Here, while the non-AOAO beneficiaries and BOH had agreed to a $9,850 trustee's fee, the AOAO did not. Therefore, the beneficiaries and the trustee did not mutually agree to BOH's proposed trustee's fee, and the reasonableness of the trustee's fee may be determined by the compensation set forth in HRS § 607-18.

According to BOH's published fee schedule (effective November 2012), BOH may collect 6% of the gross rental income from an income-producing property managed with a third-party property manager. In a letter to the trustees on May 9, 2014, BOH requested such compensation. BOH stated, "[a]pplying Trustee's standard 6% fee to the arbitrated annual rent of $3,378,840 results in an annual fee of $202,730.40 - or $16,894.20 per month." Based upon that calculation, BOH requested a monthly trustee's fee of $16,800.

After further negotiations between the parties, BOH and the non-AOAO beneficiaries agreed to a compromise trustee's fee which reduced the trustee's fee to 3.5% of Trust income, resulting in a monthly trustee's fee of $9,850.

---

[13](...continued)
the consumer determines that a corporate trustee's charge for services is too high. This measure entitles corporate trustees to fees under their published fee schedules instead of the fee schedule under statute.

S. Stand. Comm. Rep. No. 275, in 2013 Senate Journal, at 992.

The Brusers did not allege that BOH had failed to fulfill the duties delegated to it by the Trust Agreement. It was not disputed that BOH was generally exercising its responsibilities under the Trust, i.e., executing condominium conveyance documents and collecting rents from those condominiums, granting easements over the trust estate, filing tax returns on behalf of the trust, and protecting the trust estate.

Accordingly, while the probate court could have ordered a different fee for good cause, the probate court did not abuse its discretion by approving a monthly trustee's fee of $9,850.

**C.    The ICA did not err in rejecting the Brusers' specific objection to the probate court's award of attorneys' fees and costs.**

The probate court granted reduced attorneys' fees and costs to BOH. However, the ICA vacated and remanded the order because it determined that the probate court "did not make any findings regarding whether and to what extent this litigation was for the benefit of all beneficiaries." Neither did the order "include, nor does the record reveal, any reasons for the reduction of the fees and costs requested[,]" as is required by Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 33, 79 P.3d 119, 126 (2003).

The ICA therefore remanded "for a determination of

31

which portions, if any, of this litigation were in the advancement of, and not in opposition to, the interests of all the beneficiaries under the Trust Agreement and to state its reasons for reducing the amount of attorneys fees awarded."

On certiorari, the Brusers contend, for the first time, that the probate court exceeded its statutory authority to award attorneys' fees and costs against them. Because this argument was first raised on certiorari, it is waived in this proceeding pursuant to HRAP Rule 40.1(d), and we will not address the merits of this particular argument.[14]

Finally, the Brusers continue to argue that BOH's affidavits requesting attorneys' fees and costs were riddled with block billing, which is generally disfavored as a method of documenting time spent for the purposes of supporting a motion for attorneys' fees. Gurrobat v. HTH Corp., 135 Hawaiʻi 128, 135, 346 P.3d 197, 204 (2015). However, BOH's counsels' affidavits in support of its request for attorneys' fees and costs were not riddled with block billing. Because BOH's affidavits further delineate specific times spent on each activity within the titled work descriptions, it is not

---

[14] On remand, the probate court should consider any renewed argument by the Brusers that they are not liable for attorneys' fees and costs because the probate court has "no ability to award fees and costs against the Brusers." See In re Estate of Campbell, 46 Haw. 475, 522, 382 P.2d 920, 953 (1963).

"impossible for the court to determine the reasonableness of the hours spent on each task." Id. We therefore conclude that BOH's requests for attorneys' fees and costs were not impermissibly block billed.

Accordingly, the ICA did not err when it determined that the Brusers' specific objection is without merit.

## IV. CONCLUSION

The ICA erred when it decided that the Brusers were liable for the trustee's fees. The probate court specifically declined to address that issue, and the issue was therefore not before the ICA. Because the ICA erred in determining the issue of liability, we vacate the ICA's judgment on appeal to the extent that it holds the Brusers liable for the trustee's fees.

We affirm the part of the ICA's judgment on appeal which affirmed the probate court's (1) April 17, 2015 "Order Denying Interested Parties Michael David Bruser and Lynn Bruser, Trustees Under Revocable Living Trust Agreement Dated July 11, 1988, as Amended, Doing Business as Discovery Bay Center's Petition Under HPR Rule 36 for Relief from Order and Reconsideration of Interim Order Relating to Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" and

33

corresponding "Judgment," and (2) April 17, 2015 "Second Order Granting in Part and Continuing in Part Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008 Through December 31, 2013" and corresponding "Judgment," on the specific issue of the reasonableness of the trustee's fee.

We also affirm the ICA's judgment on appeal vacating and remanding the probate court's August 13, 2015 "Order Granting Petition for Resignation of Trustee, Appointment of Successor Trustee, Reformation of Trust and Approval of Trustee's Accounts Covering the Period from January 1, 2008, Through December 31, 2013 as to Last Pending Issue Regarding Attorneys' Fees and Costs" as it pertains to the issues raised in the Brusers' appeal.

On remand, in addition to determining "which portions, if any, of this litigation were in the advancement of, and not in opposition to, the interests of all the beneficiaries . . . and to state its reasons for reducing the amount of attorneys fees awarded," the probate court should consider any renewed motion by the Brusers that the probate court cannot award attorneys' fees and costs against them.

Gary Victor Dubin and Frederick J. Arensmeyer for petitioners

/s/ Paula A. Nakayama

/s/ Richard W. Pollack



Vincent A. Piekarski, Raymond K. Okada, Judy Y. Lee, Johnathan C. Bolton and Dierdre Marie-Iha for respondent Bank of Hawaii

/s/ Michael D. Wilson

/s/ James H. Ashford

/s/ Faʻauuga Toʻotoʻo

Robert Bruce Graham, Jr., James K. Mee and H. Shan Wirt for respondent Susan Sheetz and Patricia Sheetz

Blake W. Bushnell for respondents Julie G. Henderson, Trustee of the Julie G. Henderson Irrevocable Trust, the Jean K. Gowans Irrevocable Trust and the Louis L. Gowans, Jr. Irrevocable Trust; and Richard L. Gowans, Trustee of the Richard L. Gowans Irrevocable Trust

Douglas C. Smith and Christopher J.I. Leong for respondent Kevin I. Yokoyama, as Trustee of the Kevin I. Yokoyama Trust and the Irvine K. Yokoyama, Jr. Trust